UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CLIFTON REED,

             Plaintiff,

    v.

NANCY A. BERRYHILL, et al.,

             Defendants.

Case No. 16-cv-06710-MEJ

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 20, 23

## INTRODUCTION

Plaintiff Clifton Reed ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Nancy A. Berryhill, et al. ("Defendant"), the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 20, 23. Pursuant to Civil Local Rule 16-5, the Motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and the relevant legal authority, the Court hereby **GRANTS** Plaintiff's Motion and **DENIES** Defendant's Cross-Motion for the reasons set forth below.

## BACKGROUND

Plaintiff was born in 1983. Plaintiff received special education services in school. AR 425-26. He was diagnosed with organic mental disorders, and on that basis received Supplemental Security Income benefits from the time he was 13 until he turned 18. AR 277. He worked sporadically after that time washing cars, helping in kitchens, and as a clerk in a clothing store. AR 333-35. He applied for, and was denied, disability benefits in 2009 and 2010; he did not appeal those denials. AR 274. This Order concerns the denial of Plaintiff's 2012 applications

for disability benefits.

**SOCIAL SECURITY ADMINISTRATION PROCEEDINGS**

On September 25, 2012, Plaintiff filed claims for Disability Insurance Benefits and Supplemental Security Income, alleging disability due to mental illness beginning on December 31, 2008. On March 11, 2013, the Social Security Administration ("SSA") denied Plaintiff's claim, finding that Plaintiff did not qualify for disability benefits. Plaintiff subsequently filed a request for reconsideration, which was denied on October 30, 2013. On December 8, 2014, Plaintiff appeared at a hearing scheduled by Administrative Law Judge ("ALJ") Nancy Lisewski; the ALJ continued the hearing to allow Plaintiff time to obtain representation and update his records. AR 41-43. Plaintiff, still unrepresented, testified in person at a January 26, 2015 hearing. AR 46. The ALJ also heard testimony from Vocational Expert ("VE") Christopher Salvo. Attorney Daniel Homer began to represent Plaintiff after that hearing; he requested the record remain open for 45 days, entered additional medical evidence into the record, and requested a supplemental hearing. AR 206, 382, 386. ALJ Lisewski conducted a third hearing in the matter on June 1, 2015; Plaintiff testified in person, this time represented by his attorney. AR 59. VE Mary Ciddio also testified at the hearing. *Id.* Plaintiff requested the ALJ keep the record open for another week. AR 60.

**A.     Plaintiff's Testimony**

      1.     January 26, 2015 Hearing (AR 41-52)

Plaintiff testified he had never worked full time, but had done some temporary work in the prior year. He lived with his mother, and his aunt brought him to the hearing. Although he worked "pretty steadily" between 2005 and 2009, he was never able to keep a job very long because of "interacting with people." He has trouble standing for four to five hours; after sitting for an hour or two, he has to get up because his knees cramp up. He can lift 80-100 pounds without a problem.

He was getting treatment at Sausal Creek (an outpatient stabilization clinic) for his depression, anxiety, learning disability, and difficulties with trusting people. He was prescribed

medication; however, Remeron gave him a seizure at the regular dosage and made him sleepy at the lower dosage. The other medication "worked." He has trauma. He did not know how to deal with the murder of his nephew; he used to get mad and overwhelmed—he just shut down. He never had any therapy, but he trusts his mother and opens up to her. Other than his mother, Plaintiff does not really interact with people.

On a typical day, Plaintiff tries "to just be peaceful and probably just help [his] mom around the house, or just go [ ] walk to a park or something, just peace – fresh air." He has only one friend, but they do not speak. He goes to church and has no problem being in church for services.

2.     June 1, 2015 Hearing (AR 61-68)

Plaintiff testified he was living with his mother, but that he was basically homeless because she was living with her sister and he sometimes was asked to go elsewhere. He gets along well with the people he lives with, "I just keep it . . . respectable . . . help around . . . empty the garbage . . . I try to stay gone, . . . and come back at a reasonable time." But there are times he cannot stay there because of difficulties getting along with people.

Plaintiff feels like he is about to have a mental breakdown: "It's just like it's getting harder and harder for me. I'm trying and it seems like I can't get it." He thinks he is experiencing PTSD; he is reliving past tragic events like deaths, jail, and people he cares about. He stays closed in to avoid the negative things in the world. He just shuts down. He does not feel right with some people; there are some people with whom he interacts that make him feel comfortable.

He took the bus to the hearing. He worked for a temp agency in 2012. Since then, things have been up and down. He can go to places alone; in fact, he would rather be alone than with a group of people. He isolates a lot from others.

He sees therapists at Sausal Creek and another place (he could not remember the name). He does not take his medications because they are too powerful and make him sleepy or numb.

He used illegal drugs when he was really feeling bad, but that has stabilized and now he does not need drugs. He drinks alcohol when he is depressed and does not have anybody to talk

to.  He feels people do not  want to hear him talk about his emotions and they think he is probably just making things up.

**B.      The ALJ's Findings**

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[1]  20 C.F.R. § 404.1520.  The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).  During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(i), (b).  Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since December 31, 2008. AR 21.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act.  20 C.F.R. § 404.1520(a)(4)(ii).  If no severe impairment is found, the claimant is not disabled.  20 C.F.R. § 404.1520(c).  Here, the ALJ determined that Plaintiff had the following severe impairments: borderline intellectual functioning, an affective disorder, an anxiety disorder, polysubstance dependence, and a possible psychotic disorder, specifically, methamphetamine use. AR 21.

---

[1] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 22.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, but is limited to non-public, simple, routine work. AR 25.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined that Plaintiff had no past relevant work. AR 29-30.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of

a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, based on the testimony of the vocational expert, Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff can perform, specifically, hand packager, small products assembler, production assembler, laundry worker, plastics inspector, and photocopy machine operator. AR 30-31.

## C. ALJ's Decision and Plaintiff's Appeal

On July 9, 2015, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 18-32. This decision became final when the Appeals Council declined to review it on September 19, 2016. AR 1. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On June 6, 2017, Plaintiff filed the present Motion for Summary Judgment. On August 4, 2017, Defendant filed a Cross-Motion for Summary Judgment.

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

## DISCUSSION

Plaintiff argues the ALJ erred in her evaluation of the different medical opinions in the record and also erred in discounting his credibility. *See* Pl.'s Mot. He requests the case be remanded for an immediate payment of benefits, or in the alternative, for further administrative proceedings.

### A.    Evaluating Medical Opinions

#### 1.    Medical Evidence of Record

*Doug Stone-Miller, Ph.D. (AR 484-487)*

Dr. Stone-Miller performed a forensic psychological evaluation of Plaintiff on June 10, 2009, in connection with one of Plaintiff's earlier denied applications for disability benefits. He administered a number of tests and interviewed Plaintiff. He found Plaintiff's social skills were good, his communication was clear, and he was cooperative and established a good rapport. Plaintiff's mental status exam was mostly unremarkable, including his concentration; his estimated apparent intelligence level was low average. Dr. Stone-Miller noted Plaintiff "denied perceptual abnormalities other than transient illusions when in groups of people." Plaintiff's participation and motivation were good; the clinical impression suggested a balanced and honest presentation. Plaintiff related being placed in special education classes, and Dr. Stone-Miller diagnosed borderline intellectual functioning. Plaintiff "denied any psychological symptoms. He has never been hospitalized for psychological problems or had professional mental help." The only Axis I diagnoses made by Dr. Stone-Miller were cannabis dependence (sustained full

remission), and "Rule Out: Learning Disorder Not Otherwise Specified."  When asked whether his psychological issues interfered with his ability to work, Plaintiff responded, "I'm not sure."  Dr. Stone-Miller opined Plaintiff has the ability to understand and remember simple instructions, and the ability to carry out simple instructions; his concentration seemed adequate; he is able to appropriately relate to others; he is able to consistently adhere to a typical workday or week; he can maintain a minimally acceptable pace in a work setting.

### Barry Finkel, Ph.D. (AR 488-491)

Dr. Finkel performed a disability evaluation of Plaintiff on September 14, 2010, and noted the presenting problem was "allegations of a learning disability and speech problems."  A mental status exam was unremarkable, and Plaintiff denied being depressed and denied any mental health history.  Dr. Finkel observed no psychotic symptoms.  There was no evidence of malingering.  Based on Plaintiff's test results, Dr. Finkel opined Plaintiff had no Axis I psychiatric diagnoses; borderline intellectual functioning; and a GAF of 70.  Dr. Finkel found Plaintiff was polite, cooperative, and presented as a serious, thoughtful young man.  He opined that Plaintiff could follow simple instructions; should be able to attend and follow through on simple tasks without direct supervision; and had a moderately impaired attention span.  He further opined that Plaintiff's pace may be mildly impaired, but that his concentration and interaction with supervisors and peers were within normal limits, and he was competent to manage funds.  Dr. Finkel summarized that Plaintiff's ability to work over an eight-hour day and attend to a regular work schedule may be mildly impaired.

### Kimberly Kono, Ph.D. (AR 447-458)

Dr. Kono performed a neuropsychological evaluation of Plaintiff on November 28, 2012. She interviewed Plaintiff; based on his demeanor and the results of a 15-point test, she estimates Plaintiff put forth an adequate amount of effort during testing and suggests tests results are a valid estimation of his abilities in the domains assessed.  Dr. Kono administered a battery of tests during her evaluation. She found Plaintiff's intellectual functioning is in the borderline range of mental retardation, and his academic abilities are below the 6th grade equivalent due to his level of

intelligence, not a learning disability. Plaintiff scored as severely impaired in certain areas of attention and concentration and average in other areas; his learning and memory ranged from moderately to severely impaired; his language skills were average; his visuospatial organization was moderately to severely impaired; his motor functioning was severely impaired; and his executive functioning ranged between average and severely impaired.

Based on Plaintiff's reports of depression after the murder of his nephew in 2002, loneliness, distractibility, forgetfulness, social discomfort, anxiety, as well as spells of terror and panic, Dr. Kono found he had symptoms of psychological discomfort and somatic disorders, i.e., pain. Plaintiff attributed his pain to being "'cut or stabbed' in his lower back" in 2000. AR 449. She reported Plaintiff lives with his mother and her sister and has never lived independently; he washes the dishes, disposes of garbage, and fixes things around the house; he would be independent in his activities of daily living if it were not for chronic pain that makes it difficult for him to walk long distances, stand for long periods of time, and lift heavy objects. Based on the clinical evaluation and test results, Dr. Kono found Plaintiff's mental health symptoms seem congruent with major depression and posttraumatic stress disorder, which reportedly developed after his nephew's 2002 murder; and social phobia. She evaluated Plaintiff's GAF at 37, "marked" limitations in six areas of mental ability and aptitude needed to do unskilled work, and "extreme" limitations in the remaining four areas.

*Michael Boroff, Psy.D. (AR 460-466)*

Dr. Boroff treated Plaintiff for one hour on three occasions between November 2012 and February 2013 when Plaintiff presented to the TRUST Clinic with complaints of depression, anxiety, difficulty being around people, and struggles related to traumatic events. Dr. Boroff completed a psychological evaluation of Plaintiff in August 2013, in which he noted the 2002 murder of Plaintiff's nephew as one of several traumatic events Plaintiff had experienced, along with being stabbed in 2000 and held at gunpoint in 2009. Dr. Boroff found Plaintiff's affect during his visits was congruent to his reported depressed mood; his thought process seemed linear and goal-directed; his speech was coherent and appropriate; he appeared to be of borderline

9

intelligence, with impaired focus and memory; his judgment and insight were poor, with significant interference caused by his mental illness.  Dr. Boroff did not observe or report perceptual disturbances.  Plaintiff never appeared under the influence of any substance.  Dr. Boroff diagnosed Plaintiff with major depressive disorder, recurrent, moderate; posttraumatic stress disorder, chronic; social phobia, panic disorder; he also found Plaintiff demonstrated borderline intellectual functioning.  In Dr. Boroff's opinion, Plaintiff's mental illness significantly impacts his ability to function across all aspects of his life, including his ability to obtain and maintain a job, as it would interfere with his attendance and punctuality and would cause problems with social interactions in the workplace.  Dr. Boroff estimated Plaintiff's GAF was 39.

Dr. Boroff described the following clinical findings: restricted, depressed affect; struggles in articulation and verbal expansiveness; and impaired cognitive functioning, memory, focus, insight, and judgment.  He noted "Mr. Reed struggles to engage because of his symptoms."  Based on his examination, Dr. Boroff opined Plaintiff (1) had no useful ability to in the category of maintaining regular attendance and being punctual within customary, usually strict tolerances; (2) would meet competitive standard in seven categories, including maintaining attention for two-hour segments, working in proximity to others without being unduly distracted, performing at a consistent pace without unreasonable number and length of rest periods, getting along with co-workers without unduly distracting them, and dealing with normal work stress; and (3) seriously limited in an additional four categories, including understanding and remembering very short and simple instructions.  He also opined Plaintiff was unable to meet competitive standards in interacting appropriately with the general public, maintaining socially appropriate behavior, and use public transportation, noting Plaintiff has "significant impairments in social functioning."  He also noted Plaintiff has "extreme" difficulties in maintaining social functioning.  He found Plaintiff had a low IQ or reduced intellectual functioning based on his history of special education.  He also expected Plaintiff's mental impairments or treatment would cause him to be absent four or more days from work per month.  He opined Plaintiff was not malingering.

10

*Joshua C. Schwartz, Ph.D. (AR 71-81)*

In February 2013, SSA Consultant Dr. Schwartz reviewed the handful of records Plaintiff had provided in connection with his 2012 application for disability benefits. He found Plaintiff had severe borderline intellectual functioning and affective disorders, but did not meet the listing for either diagnosis. Dr. Schwartz found Plaintiff was moderately or not significantly limited in ability and limited Plaintiff to simple tasks, but found Plaintiff could perform his past relevant work.

*Tawnya Brode, Psy.D. (AR 111)*

In September 2013, SSA Consultant Dr. Brode reviewed Plaintiff's case on reconsideration. Dr. Brode summarized the results of Dr. Stone-Miller's 2009, Dr. Finkel's 2010, Dr. Kono's 2012, and Dr. Boroff's 2012 evaluations and found questionable Plaintiff's increasing symptoms with every encounter. Dr. Brode observed that in his first exam, Plaintiff denied a history of psychological concerns and indicated no history of problems on the job, and again denied a history of psychological symptoms to Dr. Finkel. Plaintiff then reported a lifelong history of anxiety to Dr. Kono and lifelong depression to Dr. Boroff; similarly, he reported being stabbed to Dr. Boroff, but had never mentioned this before despite fairly detailed medical history given to Dr. Kono. Dr. Brode observed: "This is his third application and quite frankly it appears he is motivated by secondary gain. It is true that there are some disease processes that would offer a decline in functioning over time, however, this does not appear to be the case and I see stark inconsistencies as noted above not to mention absolutely no [psychological treatment] on file. In summary, [Plaintiff] is capable of simple work."

*Paul Nichols, M.D. (AR 474, 503-505)*

Plaintiff saw Dr. Nichols at Sausal Creek Outpatient Stabilization Clinic in January 2015, complaining of anxiety, interrupted sleep, and depression. He admitted to using meth-amphetamines and cannabis five times a month and drinking three to four beers daily. He reported hearing voices since age 11, and that the voices bother him sometimes; he reported some difficulty in learning, reading, and writing. Dr. Nichols diagnosed psychotic disorder NOS, mood disorder

1    NOS, and polysubstance dependence.  He recommended detox and prescribed Risperidone and

2    Remeron.

3         *Lesleigh Franklin, Ph.D, and Dionne Childs, MS (AR 493-501)*

4         Dr. Franklin and MS Childs performed a psychological evaluation to determine Plaintiff's

5    current cognitive functioning and the severity of his mental health symptoms in February 2015.

6    Plaintiff was homeless at the time.  They reviewed a number of records, including Dr. Stone-

7    Miller's 2009, Dr. Finkel's 2010, and Dr. Kono's 2012 evaluations.  They also reviewed "TRUST

8    Clinic" records; Dr. Franklin does not state whether the records were limited to Dr. Boroff's report

9    or also included the underlying treatment records.  Dr. Franklin interviewed Plaintiff and

10   administered four procedures.  Plaintiff reported that he began drinking alcohol in 2002 when his

11   nephew was murdered and used marijuana all the time.  He also reported that cocaine had gotten

12   in the way of work; he had DUI arrests and a history of marijuana dependence.  They observed

13   Plaintiff's records from 2009 "suggest less difficulty with social relationships than are currently

14   reported and documented."  They also observed that Plaintiff's attention was impaired on formal

15   measures; he worked at a rate that was slow as compared with peers and he was not able to sustain

16   attention well enough to remember short strings of information; immediate memory problems

17   were severe; delayed memory was low average; speech was generally normal.  They further

18   observed Plaintiff was pleasant and engaged, open, somewhat anxious and presents as somewhat

19   odd; his fund of knowledge, intelligence, and abstraction were well below average based on

20   formal testing; his judgment and insight were low, but seem to be improving.  "There was no

21   evidence of substance use on the day of the evaluation and no evidence that he was exaggerating

22   his symptoms for personal gain."

23        Plaintiff tested Well Below Average on overall intellectual functioning; average in

24   language; extremely low in visuospatial/constructional abilities, suggesting poor execution and

25   visual perception; Well Below Average in immediate memory and Low Average in delayed

26   memory; Extremely Low in attention and concentration.  "Overall, Mr. Reed['s] score placed him

27   in the 1st percentile and in the Extremely Low range.  There were notable problems with

28

visuospatial abilities, immediate memory, delayed memory, attention and concentration, and executive functioning, but language was within average range and delayed memory was low average."

The results of Plaintiff's emotional testing indicated he was experiencing moderate anxiety and moderate depression. Based on the records Dr. Franklin and MS Childs reviewed, the limited time afforded for the evaluation, and Plaintiff's self-reports, they offered a number of diagnoses and opined he met the criteria for depressive disorder, PTSD, polysubstance dependence, and borderline intellectual functioning. The GAF "would describe Mr. Reed as having serious impairment in social and occupational functioning."

They opined Plaintiff had marked limitations in his ability to understand and carry out detailed instructions, maintain attention and concentration for two hour segments, respond appropriately to changes in routine and deal with normal work stressors, and complete a workday without interruptions from psychologically-based stressors. They also opined Plaintiff otherwise only had moderate or mild limitations, including mild limitations in performing at a consistent pace and in maintaining regular attendance and punctuality.

*Nadirah Stills, M.F.T. (AR 483)*

MFT Stills began treating Plaintiff on January 26, 2015, after Plaintiff was discharged from Sausal Creek. On April 6, 2015, MFT Stills wrote a letter to Plaintiff's attorney and explained Plaintiff had been diagnosed with major depressive disorder with anxious features; his symptoms included a depressed mood for more days but not for more than two weeks, irritability, insomnia, decreased appetite, isolation, and poor concentration. MFT Stills further explained Plaintiff's symptoms of paranoia, irritability, and depressed mood limit his ability to effectively interact in social and work situations; at times, he becomes overwhelmed, which affects his ability to concentration and complete tasks. His mental health rapidly cycles from day to day and affects his ability to work a consistent job. He was prescribed psychiatric medication and received follow-up psychiatric services. The focus of treatment will be to help him gain control of his anxious thoughts and stabilize his moods.

2.     Applicable Legal Standards

"Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an opinion of a treating physician should be favored over that of a non-treating physician. *Id.* at 830-31. However, a treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The opinion of an examining physician generally is entitled to greater weight than the opinion of a non-examining physician, *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008), and the "opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician, *Lester*, 81 F.3d at 831. *See also* 20 C.F.R. § 404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions.").

In order to reject the "uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (internal quotation marks and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "The ALJ must do more than offer [] conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted). An ALJ errs when he or she does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one

14

medical opinion over another.  *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996).  In other words, it is error for an ALJ not to offer a substantive basis before assigning little weight to the medical opinion.  *See id.*  Generally, the SSA will give greater weight to an opinion that is more consistent with the record as a whole.  20 C.F.R. § 416.927(c)(4).

"The ALJ is responsible for determining credibility and resolving conflicts" or ambiguities in the medical evidence.  *Magallanes*, 881 F.2d at 750.

### 3.  Analysis

Defendant offers numerous reasons on which the ALJ could have relied to reject the opinions of Drs. Kono, Boroff, and Franklin.  *See* Opp'n.  The Court limits its review to the reasons the ALJ actually articulated for doing so.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.") (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

#### a.  Dr. Kono

Dr. Kono is a psychologist who actually met Plaintiff and assessed his demeanor and responses to both questions and testing; she is an examining physician.  The Court assumes for purposes of this Order that Dr. Kono's opinions are contradicted by those of Drs. Stone-Miller and Finkel.[2]  Thus, the ALJ could reject Dr. Kono's opinions, but could only do so for specific and

---

[2] After acknowledging the 2009 Stone-Miller and 2010 Finkel reports were "a long time ago", the ALJ nonetheless found them "quite relevant as they throw some light on [Plaintiff's] presentation. AR 26.  The ALJ observed Plaintiff had denied psychological symptoms or problems in the work setting to Dr. Stone-Miller and demonstrated adequate concentration and the ability to understand and remember simple instructions, carry out simple instructions, and relate to others appropriately. The ALJ gave partial weight to this opinion because "the record as a whole supports the need for limitations in social functioning, however, it is otherwise definitively supported by and consistent with his findings on evaluation of the claimant."  AR 27.  The ALJ again observed that Plaintiff had denied psychological symptoms and any mental health history to Dr. Finkel, and that Dr. Finkel opined Plaintiff should be able to attend to and follow through on simple tasks without direct supervision, although his attention and pace might be impaired, as would his ability to work an eight-hour day and attend to a regular schedule.  *Id.*  The ALJ gave Dr. Finkel's opinion partial weight "because the record as a whole supports limitations in social functioning that Dr. Finkel did not see at the time of his evaluation."  *Id.*

15

United States District Court
Northern District of California

legitimate reasons based on substantial evidence. The ALJ gave little weight to Dr. Kono's opinion because her opinion was brief, conclusory, and inadequately supported by clinical findings. AR 27. "Dr. Kono apparently relied on the subjective report of symptoms and limitations provided by the claimant, and seemed to accept uncritically as true most, if not all, of what the claimant reported. As is seen by the present record, there is no evidence to support Dr. Kono's opinion other than the claimant's self-reported and unsupported symptoms." AR 27.

First, Dr. Kono did not "uncritically accept" Plaintiff's subjective complaints; she conducted a clinical interview and confirmed the validity of Plaintiff's responses to clinical testing by administering a Rey 15-Item test. She found the test results suggested Plaintiff put forth an adequate amount of effort during testing and that the results were a valid estimation of his abilities in the domains assessed. AR 450.

Second, while Dr. Kono completed a symptoms checklist based on her observations and on Plaintiff's responses to questioning, she also evaluated Plaintiff's aptitudes and limitations by administering the Wechsler Abbreviated Scale of Intelligence (WASI) test, the Wide Range Achievement Test – 4 (WRAT4), Stroop Color and Word Test, Trails A and B, and the Mental Control subtest of the Weschler Memory Scale – III (WMS-III). AR 447. Dr. Kono documented Plaintiff's scores on these standardized, clinical tests and translated those scores into levels of intellectual functioning, academic functioning, attention and concentration, learning and memory, language, visuospatial organization, motor functioning, executive functioning, and psychological functioning. AR 450-51, 455-57. The ALJ does not acknowledge the test results and Dr. Kono's interpretation thereof, much less provide specific and legitimate reasons for rejecting the results or Dr. Kono's professional interpretation. The ALJ's conclusion that Dr. Kono's evaluation is "brief, conclusory, and inadequately supported by clinical findings" (AR 27) is not supported by substantial evidence.

Third, the ALJ erred in rejecting Dr. Kono's opinions on the ground they "are simply not supported by the claimant's longitudinal history." AR 28. The ALJ does not articulate which opinions are not supported by Plaintiff's longitudinal history, or which portions of the longitudinal

16

history do not support Dr. Kono's opinions.  To the extent the ALJ found Dr. Kono's findings were not supported by the longitudinal record because they were more severe than the findings of Drs. Stone-Miller and Finkel, that conclusion is also not based on substantial evidence.  For example, the ALJ does not compare Plaintiff's tests results from 2009, 2010, and 2012.  Although Dr. Kono was the first to administer a number of clinical tests, Dr. Stone-Miller previously administered the Wechsler Adult Intelligence Scale – Third Edition (WAIS III) (AR 484) and Dr. Finkel previously administered WAIS III, WMS-III, and Trails A and B (AR 489-490).  The ALJ did not attempt to compare Plaintiff's tests scores over time to determine whether they revealed a change in performance, or whether similar results were interpreted more severely by Dr. Kono.  There also is no evidence in the record that others previously assessed the same specific aptitudes and limitations for which Dr. Kono tested.  Plaintiff's lifelong history of borderline level intelligence is supported by the finding of childhood disability on that basis, his history of special education classes, and every physician who examined him in connection with his disability applications.  While Plaintiff denied a history of depression and mental health treatment to Drs. Stone-Miller and Finkel, there is no evidence Plaintiff did not actually experience these conditions during the relevant period.  On the contrary, Dr. Franklin suggested Plaintiff's failure to mention psychological symptoms in 2009 and 2010 may indicate that he was experiencing a break from such symptoms at the time, or may suggest his symptoms have gotten worse.  AR 494-95.  The ALJ also does not analyze whether Plaintiff's borderline level of intelligence might affect his ability to recognize psychological symptoms and articulate them, much less obtain treatment for those problems.  *See Nguyen*, 100 F.3d at 1465 ("[I]t is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness. . . .  Thus, the fact claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude Dr. Brown's assessment of claimant's conditions is inaccurate.").  The ALJ did not ask Plaintiff during any of the hearings why he had failed to obtain treatment, and does not address the fact Dr. Boroff opined Plaintiff's symptoms made it difficult

17

for Plaintiff to engage in treatment (AR 461).

Fourth, the ALJ did not acknowledge the consistency of Dr. Kono's opinions with those of other examining physicians who also diagnosed Plaintiff with depression, anxiety, and/or PTSD. *See* AR 461, 483, 499; *see also* AR 505 (diagnosing Plaintiff with psychotic disorder NOS and mood disorder NOS). This belies the ALJ's conclusions there was no evidence in the record to support Dr. Kono's findings, and that these findings were inconsistent with Plaintiff's longitudinal history. Drs. Boroff and Franklin also found similar levels of "marked" or "extreme" limitations, for example, with respect to Plaintiff's ability to maintain attendance and punctuality, maintain pace and concentration, deal with normal work stress, and complete a normal workday without interruptions from symptoms. AR 458 (Dr. Kono), 463-464 (Dr. Boroff), 501 (Dr. Franklin noted marked limitations in a number of categories, including maintaining attention and concentration for 2 hour segments, responding appropriately to changes and dealing with normal work stress, and completing a normal workday without interruptions from symptoms); *see also* AR 483 (MFT Stills). The ALJ focused instead on the earlier opinions of Drs. Stone-Miller and Finkel. In light of the foregoing, the ALJ's conclusory statement that there is no evidence "on the present record" to support the limitations found by Dr. Kono—based on her in-person examination and cognitive testing of Plaintiff—is not the type of "detailed and thorough summary of the facts and conflicting clinical evidence" that is required to reject such opinions. *Reddick*, 157 F.3d at 725; *see also Embrey*, 849 F.2d at 421-22 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.").

And finally, to the extent the ALJ rejected Dr. Kono's opinions based on the opinions of non-examining SSA consultants Schwartz and Brode, this also was error. *See Lester*, 81 F.3d at 831; *Buck v. Berryhill*, 869 F.3d 1040, 1049-50 (9th Cir. 2017) (applying *Lester* and finding it was error for ALJ to reject opinion of examining physician based on opinion of non-examining expert, especially when opinion of non-examining expert is contradicted by other source). Dr. Schwartz

only reviewed a handful of records; Dr. Brode did not review Dr. Franklin's report or MFT Still's evaluation. Dr. Brode's observation that Plaintiff increased his report of symptoms with every encounter (AR 110) appears to be in part based on her misreading of the file. For example, in her summary of Dr. Boroff's records, Dr. Brode states: Plaintiff "talks about [history] of being stabbed (not reported elsewhere in file despite fairly detailed medical [history] given at neuropsych[ological] eval[uation]" with Dr. Kono. AR 100. But Plaintiff did tell Dr. Kono he was "stabbed or cut" in his lower back. AR 449. Dr. Brode similarly asserts that Plaintiff "has always denied perceptual abnormalities at prior three exams" before meeting Dr. Boroff, but Dr. Stone-Miller acknowledged that Plaintiff reported "transient illusions when in groups of people." AR 485. Dr. Brode also criticizes Plaintiff for describing his history of special education to Dr. Kono but "neglect[ing] to say that he was also mainstreamed for a portion of his [education]." AR 100. Dr. Kono does not write in her report that Plaintiff was "only" enrolled in special education classes—she simply writes that he was enrolled in special education classes. AR 447. Moreover, Dr. Kono does not indicate what specifically Plaintiff told her and what she chose to include in her report that was relevant to the neuropsychological evaluation she was performing. There is no basis for using this statement to impugn Plaintiff's credibility. Indeed, Dr. Brode was the *only* physician who found the evolution of Plaintiff's symptoms suspect and who suggested he was motivated by "secondary gain." *See* AR 100. Each physician who actually examined Plaintiff found Plaintiff cooperative and considered his test results a valid measurement of his performance. Dr. Brode acknowledged that "there are some disease processes that would offer a decline in functioning over time" but summarily concluded that "this does not appear to be the case." *Id.* Dr. Brode provided no explanation for her conclusion. Her opinions are not based on the whole record, and are contradicted by other sources.

For these reasons, the Court finds the AJL did not reject Dr. Kono's opinions based on substantial evidence.

### b. Dr. Boroff

The ALJ gave little weight to Dr. Boroff's opinion because it was "unsupported": "Dr.

Boroff apparently relied entirely on the subjective report of symptoms and limitations provided by the claimant, and seemed to accept uncritically as true most, if not all, of what the claimant reported. Yet, as shown in the record as well as by the lack of consistent treatment, there exist some reasons for questioning the claimant's subjective complaints." AR 28. The ALJ also found Dr. Boroff's report was not supported by Plaintiff's longitudinal history. *Id.*

Dr. Boroff's evaluation and mental impairment questionnaire are based on his observations of Plaintiff during three separate treatment visits, each of which lasted an hour. AR 460.[3] Dr. Boroff did not indicate he suspected Plaintiff of malingering or exaggerating his symptoms. On the contrary, he described him as "cooperative and engaged" and noted he "appeared forthcoming through the assessment, and at no point did he appear to be under the influence of any substance." AR 461.[4] Thus, Dr. Boroff assessed whether Plaintiff's reports were reliable, and the ALJ's conclusion that Dr. Boroff accepted uncritically Plaintiff's reported symptoms is not based on substantial evidence. Neither is her conclusion that Dr. Boroff's opinion is based entirely on those subjective reports. Dr. Boroff, a trained and licensed psychologist, met with Plaintiff on three separate occasions. Based on those meetings, he diagnosed Plaintiff as suffering from major depression and PTSD and evaluated Plaintiff's mental abilities and aptitude to do unskilled work.

To the extent the ALJ rejected Dr. Boroff's opinion because Plaintiff did not seek

---

[3] Plaintiff asks the Court to treat Dr. Boroff as a treating physician; Defendant argues he is merely an examining physician because he did not have an ongoing treating relationship who was hired to provide a disability opinion. *See* Opp'n at 13. For purposes of this Order, the Court assumes Dr. Boroff was an examining – not a treating – physician, and applies the "specific and legitimate reasons" standard.

[4] The ALJ found there was "no concrete evidence reflecting what the claimant's mental limitations might be without use of methamphetamine, marijuana, and alcohol." AR 29. This statement is not supported by substantial evidence. On the contrary, there is no evidence Plaintiff was using methamphetamines, marijuana, or alcohol at the time of any of his evaluations. *See* AR 460 (plaintiff reported to Dr. Boroff that he had not used drugs or alcohol since his last DUI); AR 499 (no evidence of substance use when Dr. Franklin evaluated Plaintiff). Similarly, the ALJ states Plaintiff "has been in and out of jail all of his life." AR 22. The records she cites state that Plaintiff's father has been out of jail all of his life. While there is evidence Plaintiff has been charged with two DUIs, an arrest warrant was once issued when he failed to appear in court, and he was arrested for disorderly conduct, there is no evidence he spent a single day of his life in jail. *See* AR 448, 460, 488.

United States District Court
Northern District of California

consistent treatment, this is also error. Plaintiff testified that he started going to Sausal Creek because a friend told him about the program, and "this is like the first time I really have got the help that I needed all these years." AR 49. He also explained he did not take his psychiatric drugs because of the side effects. AR 66. The ALJ did not ask Plaintiff why he failed to seek mental health treatment in the past, and as described above, she failed to ascertain whether Plaintiff's failure to seek treatment was based in part on his borderline mental functioning. There is no evidence in the record that Plaintiff's failure to seek treatment was attributable to his personal preference. *Cf. Molina*, 674 F.3d at 1113-14 ("[A] claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.").

The Court's discussion rejecting the ALJ's "longitudinal history" reasoning above applies with equal force to Dr. Boroff's opinions.

For these reasons, the Court finds the ALJ did not reject Dr. Boroff's opinions based on substantial evidence.

### c.     *Dr. Franklin*

The ALJ gave little weight to the opinion of Dr. Franklin and MS Childs "because it is not supported by any objective evidence or the record as a whole." AR 29. Dr. Franklin and MS Childs based their opinions on a clinical interview with Plaintiff and clinical testing (Wechsler Abbreviated Scale of Intelligence, Repeatable Battery for the Assessment of Neuropsychological Status (RBANS)-Form A, as well as the Beck Anxiety and Depression Surveys), and on their review of the Stone-Miller, Finkel, and Kono reports, and on records from Dr. Boroff's clinic. Based on their observations during the evaluation and mental status exam, they believe the test results were a valid representation of Plaintiff's psychological and cognitive functioning. AR 496. The Court finds the ALJ's reason for rejecting Dr. Franklin and MS Childs' report is not based on substantial evidence for the reasons the Court already discussed with respect to Drs. Kono and Boroff.

**B.        Credibility**

Where there is no showing that a claimant is malingering, and where the record includes objective medical evidence establishing that a claimant suffers from an impairment that could reasonably produce the symptoms complained of, an ALJ can only make an adverse credibility finding based on substantial evidence under the "clear and convincing" standard. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). There is no indication of malingering in the record. On the contrary, Dr. Boroff opined Plaintiff was not malingering; indeed, every physician who met Plaintiff opined he was cooperative and that the results of the testing they performed appeared to be valid. The ALJ also did not find any indication of malingering.

The ALJ instead found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms and limitations. AR 26. The ALJ's adverse credibility finding therefore must be based on clear and convincing substantial evidence. *See Carmickle*, 533 F.3d at 1160. In addition, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 489, 492-94 (9th Cir. 2015) ("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.").

The ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms "not credible." AR 26. But the ALJ does not actually identify what testimony or statements by Plaintiff she found not credible (*see* AR 18-32), and the Court thus cannot review the sufficiency of the ALJ's reasons. *See* AR 25-26 (describing Plaintiff's testimony, but failing to specify which statements, if any, ALJ found not credible). This was error. *See Lester*, 81 F.3d at 834 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *see*

*also* SSR 96-7p (ALJ's credibility findings "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").[5]

Defendant argues the ALJ found Plaintiff's credibility limited chiefly due to his complete lack of treatment. Opp'n at 12 (citing AR 26, 30). The ALJ discussed the lack of treatment when discussing the lack of evidence reflecting disabling limitations and also found the lack of consistent treatment was a reason for questioning Plaintiff's subjective complaints. AR 28-29. The Court already addressed why Plaintiff's failure to seek treatment does not constitute substantial evidence on this record.

## CONCLUSION

In reviewing a Social Security Commissioner's decision, a court may remand the case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Typically, when a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (reversing and remanding for the consideration of new evidence instead of awarding benefits). Conversely, a district court in its discretion may remand for an immediate payment of benefits when (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical

---

[5] SSR 96-7p was superseded by SSR 16-3p effective March 16, 2016. SSR 16-3p eliminates language pertaining to a claimant's credibility, and reflects recommendations that the SSA clarify "that subjective symptom evaluation is not an examination of an individual's character, but rather is an evidence-based analysis of the administrative record to determine whether the nature, intensity, frequency, or severity of an individual's symptoms impact his or her ability to work." SSR 16-3p at 1 n.1. SSR 96-7p applies to the Court's review of the ALJ's decision, which was issued before March 16, 2016.

opinion; (2) the record has been fully developed and no outstanding issues must be resolved before a determination of disability can be made; and (3) if finding the relevant testimony credible as a matter of law, the record leaves "not the slightest uncertainty as to the outcome of the proceeding." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100-01 (9th Cir. 2014) (applying "credit-as-true" rule articulated in *Varney v. Secretary of Health & Human Services*, 859 F.2d 1396 (9th Cir. 1988)).

The Court concludes this case meets all three steps of the credit-as-true rule. The ALJ failed to provide legally sufficient reasons for rejecting the reports of Drs. Kono, Boroff, and Franklin, as well as for not crediting Plaintiff's symptoms testimony. The record has been fully developed: it includes no less than five psychological evaluations and testimony by Plaintiff; it also references the fact Plaintiff met the childhood listing for organic brain disorders and was awarded benefits on that basis until he turned 18. VE Ciddio testified that an individual of Plaintiff's age, education, and work background who was limited to simple, routine, non-public work and was off-task at least 30% of the time was unemployable. AR 69. VE Ciddio also testified that someone who could not deal with usual work situations and work stress, could not work. AR 70. VE Salvo testified an individual of Plaintiff's age, education, and work background who limited to simple, routine, non-public work but could have no interaction with co-workers and supervisors could not work. AR 54-55. Here, Drs. Kono and Franklin opined Plaintiff's limitation in the ability to maintain attention and concentration for extended periods of time (2 hours) was "marked," and Dr. Boroff opined Plaintiff would be unable to meet competitive standards in this area. Dr. Boroff further opined Plaintiff was "unable to function" in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; Dr. Kono opined his limitations in this area of functioning were marked. Dr. Kono opined Plaintiff's limitation in the ability to complete a workday and workweek without interruptions from psychologically-based symptoms was extreme; Dr. Franklin opined it was marked. Dr. Kono also opined Plaintiff's limitations in responding to changes in work setting and dealing with normal work stress were extreme; Dr. Franklin opined they were

marked; and Dr. Boroff (with respect to responding to work stress) opined Plaintiff was unable to meet competitive standards. Plaintiff testified he isolated himself a lot from others and has difficulty trusting people. Drs. Kono, Boroff, and Franklin all opined he had marked or extreme limitations in working with others. Drs. Kono, Boroff, and Franklin all opined Plaintiff was unable to work. The Court accepts as true the marked or extreme limitations Drs. Kono, Boroff, and Franklin found in Plaintiff's ability to maintain attention and concentration for two hours, maintain attendance and be punctual, complete a workday or workweek without interruption from psychologically-based symptoms, respond to and work with others, and respond appropriately to normal workplace stress. Based on VE Ciddio and/or VE Salvo's testimony, Plaintiff cannot work. Under these circumstances, remand for immediate payment of benefits is warranted. *See Garrison v. Colvin*, 759 F.3d 995, 1021-22 (9th Cir. 2014) (applying credit-as-true rule to opinions of treating doctor, treating nurse practitioner, examining psychologist who all deemed claimant disabled).

For these reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Cross-Motion for Summary Judgment, and **REVERSES** the ALJ's decision. This case is **REMANDED** with instructions to the ALJ to calculate and award benefits.

**IT IS SO ORDERED.**

Dated: November 1, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge